**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **A.M.-1, M.M., and J.T.**

**No. 20-0909** (Kanawha County 19-JA-518, 19-JA-519, and 19-JA-520)

**MEMORANDUM DECISION**

Petitioner Mother A.M.-2, by counsel Shawn D. Bayliss, appeals the Circuit Court of Kanawha County's October 20, 2020, order terminating her custodial rights to A.M.-1, M.M., and J.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Maggie J. Kuhl, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period, terminating her rights, and denying her post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner lived in a friend's home along with A.M.-1 and M.M. According to the DHHR, both petitioner and the friend with whom she lived were known drug users and the home contained "meth pipes . . . and crushed up pills exposed to the children and within their reach." The DHHR also alleged

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, they will be referred to as A.M.-1 and A.M.-2 throughout this memorandum decision.

that petitioner and her friend stole items to sell for drug money. When Child Protective Services ("CPS") initiated an investigation, petitioner admitted to a drug addiction and indicated that she would test positive for unprescribed and illegally obtained Xanax and Suboxone if tested. She also admitted to abusing methamphetamine. The petition alleged that the children were dirty and unkempt and that petitioner and the father of A.M.-1 and M.M. had engaged in domestic violence in the children's presence. After the petition's filing, petitioner waived her right to a preliminary hearing. The court then ordered petitioner to participate in random drug screens, supervised visitation with the children, and adult life skills and parenting education.

In January of 2020, the circuit court held an adjudicatory hearing, during which a CPS worker testified consistently with the allegations in the petition. According to the worker, petitioner admitted to substance abuse and domestic violence in the home. The worker also indicated that petitioner was homeless at the time the petition was filed, having moved from place to place with the children, including into the homes of drug users. Ultimately, the court adjudicated petitioner as an abusing parent upon her exposure of the children to domestic violence and the fact that her substance abuse impaired her parenting skills. The circuit court granted petitioner's motion for a post-adjudicatory improvement period and, following a hearing in July of 2020, granted petitioner an extension of her post-adjudicatory improvement period, over the objections of both the DHHR and the guardian, who sought the termination of petitioner's parental rights.

In August of 2020, the guardian filed a report setting forth her position that petitioner's parental rights should be terminated. According to the guardian, petitioner's psychological evaluation[2] indicated a history of opioid abuse over several years. Despite this history, petitioner reported no significant problems with alcohol, drug use, or dependence. In fact, petitioner stated that the allegation she was a drug addict was false and explained that CPS only became involved because her husband made false allegations against her in order to gain custody of the children. The guardian also indicated that petitioner's evaluation concluded that her motivation for treatment was poor as she perceived little need for behavioral change. The guardian reported that petitioner was not compliant with the terms of her improvement period, even prior to the extension. According to the guardian, prior to the extension petitioner failed to comply with services and drug screens. Following the extension, petitioner did comply with some screens, but all of them were positive. Petitioner also failed to maintain consistent contact with service providers, resulting in her failure to attend parenting and adult life skills classes. Further, petitioner failed to follow through with the recommendations of her parental fitness evaluation, which included residential substance abuse treatment, psychotherapy, a psychiatric consultation for medication management, and obtaining housing, among other recommendations. Based on petitioner's noncompliance, the guardian recommended termination of petitioner's parental rights.

---

[2]Petitioner did not include a copy of her psychological evaluation report in the appendix record on appeal.

That same month, the court held a review hearing on petitioner's improvement period, during which the DHHR indicated that petitioner had positive drug screens and that her improvement period was "not going well." The guardian then moved to suspend petitioner's visitation with the children until such time as she could produce clean drug screens, which the circuit court granted. The court then set the matter for disposition.

In October of 2020, the court held a dispositional hearing, during which petitioner sought a post-dispositional improvement period. The DHHR presented testimony from a worker regarding petitioner's noncompliance with the terms of her improvement period. According to the worker, petitioner failed to consistently submit to drug screens, having failed to screen for months at a time during the proceedings. Furthermore, on the instances when petitioner did submit to screens, she was positive for multiple substances, including methamphetamine. Based on the evidence, the court found that despite the fact that she was offered services for fourteen months, petitioner failed to comply with the services and her case plan. In fact, the court found that petitioner simply chose not to take advantage of the numerous opportunities offered during the case. Based on petitioner's continued positive drug screens and her failure to obtain adequate, stable housing, the court found that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future and that termination of her custodial rights was necessary for the children's welfare. The court then terminated petitioner's custodial rights to the children and directed that all future contact between petitioner, A.M.-1, and M.M. would be at the children's father's discretion.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[3]J.T.'s father voluntarily relinquished his custodial rights below. The permanency plan for J.T. is a legal guardianship in the current relative foster home. The permanency plan for A.M.-1 and M.M. is to remain in the care of their nonabusing father.

On appeal, petitioner argues that it was error to deny her motion for a post-dispositional improvement period.[4] In support, petitioner argues that by September 11, 2020, her participation in services had improved and that this satisfied her burden to obtain an additional period to demonstrate improvement. We find, however, that the circuit court did not err in denying petitioner's motion.

Under West Virginia Code § 49-4-610(3)(D), in order to have been granted a post-dispositional improvement period after having already been granted a post-adjudicatory improvement period, petitioner was required to establish that "since the initial improvement period, [she] ha[d] experienced a substantial change in circumstances" and "that due to that change in circumstances, [she was] likely to fully participate in the improvement period." On appeal, petitioner argues that she established a substantial change in circumstances since her initial improvement period by enrolling in a Suboxone program and participating in drug screens and parenting services. What petitioner ignores, however, is that seeking treatment for her drug addiction and participating in services were requirements of her post-adjudicatory improvement period, and her late compliance with some aspects of these requirements simply cannot be said to constitute a substantial change in circumstances sufficient to satisfy her burden. Essentially, petitioner asks this Court to reward her earlier noncompliance by finding that her late compliance with only some aspects of her improvement period is sufficient to entitle her to a second improvement period. We decline to do so, given that petitioner had approximately fourteen months to participate in services, yet only began showing compliance in mid-September of 2020.

According to petitioner, her noncompliance earlier in the proceedings was caused by the COVID-19 pandemic, and, because of its impact, she was unable to reach service providers. This argument, however, is unsupported by the record. Although it is true that the proceedings below were delayed, in part, by the pandemic, petitioner ignores the fact that the DHHR testified that it was petitioner who was difficult to reach and failed to stay in contact with service providers. Petitioner cites to no evidence in support of her position that it was the DHHR who created problems with communication. While it is true that one witness made reference to petitioner's attempts to contact one service provider, the circuit court heard the evidence concerning the lack of communication and made a credibility determination that we decline to disturb on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to

---

[4]Petitioner also argues that she moved, alternatively, for an extension of her post-adjudicatory improvement period at the same time she moved for a post-dispositional improvement period and that it was error to deny this request. However, the record indicates that the circuit court granted petitioner an extension of her post-adjudicatory improvement period in July of 2020. According to West Virginia Code § 49-4-610(6), "[a] court may extend any improvement period granted pursuant to subdivision (2) [governing post-adjudicatory improvement periods] *for a period not to exceed three months*." (Emphasis added). Because petitioner previously received a three-month extension of her post-adjudicatory improvement period, the circuit court was precluded from again extending the same. As such, it is unnecessary to analyze this aspect of petitioner's argument on appeal.

make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Further, petitioner fails to explain how the pandemic in any way caused her to continue abusing drugs throughout the pendency of the proceedings, including a positive screen for methamphetamine just two months prior to the dispositional hearing. Based on the foregoing, we find no error in the circuit court's denial of petitioner's motion for a post-dispositional improvement period, given that she could not satisfy the burden necessary to obtain one.

Petitioner next argues that it was error to terminate her custodial rights instead of granting her a less-restrictive dispositional alternative. In support, petitioner again argues that an improvement period would have been more appropriate. However, having already established that the circuit court did not err in denying petitioner's motion for an additional period of improvement, it is unnecessary to address this issue again. Petitioner also argues that disposition under West Virginia Code § 49-4-604(c)(5), permitting the children to be temporarily placed into a legal guardianship, would have been appropriate. We find, however, that petitioner is entitled to no relief.

Contrary to petitioner's argument that the circuit court's finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future was in error, we believe that this determination was based on substantial evidence. Petitioner again relies on her late compliance with some services to argue that she could, in fact, correct the conditions of abuse and neglect. However, under West Virginia Code § 49-4-604(d)(1), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which the parent has

> habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person . . . [has] not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

Again, petitioner tested positive for methamphetamine multiple times throughout the proceedings, including in the months leading up to the final dispositional hearing. Further, because she failed to comply with her required drug screens for extended periods, it is impossible to know the true extent of her substance abuse. While petitioner argues that she was enrolled in a Suboxone program at the time of the dispositional hearing, this evidence is insufficient to establish that petitioner corrected her substance abuse, given that she tested positive for Suboxone throughout the proceedings and still continued to abuse methamphetamine.[5] Further, petitioner ignores the evidence that established she lacked suitable housing for the children at the

---

[5]The record contains conflicting evidence as to whether petitioner was lawfully prescribed Suboxone throughout the entirety of the proceedings. However, even assuming that petitioner possessed a lawful prescription at all times, the fact remains that her use of Suboxone throughout the proceedings, as evidenced by its presence in her drug screen samples, did nothing to curb her continued positive screens for methamphetamine.

time of the dispositional hearing and the psychologist's conclusion that her prognosis for improved parenting was poor.

Under West Virginia Code § 49-4-604(c)(6), a circuit court may terminate custodial rights upon finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and that termination is necessary for the children's welfare. As explained above, petitioner's continued substance abuse and continued lack of appropriate housing supported the circuit court's finding regarding her inability to correct the conditions of abuse and neglect and also supports the finding that the children's welfare required termination of her custodial rights. Further, as this Court has held, termination of a parent's rights,

> "the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the overwhelming evidence in support of these determinations, we find no error in the circuit court's termination of petitioner's custodial rights.

Finally, petitioner alleges that the circuit court erred in permitting her to have continued visitation with A.M.-1 and M.M. only at their father's discretion. According to petitioner, the court should have set a visitation schedule to ensure that she receives visitation. We do not agree. As this Court has previously established,

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, the court appropriately limited petitioner's visitation to ensure that her continued contact with the children was not to their detriment. During the proceedings, petitioner's visits with the children were cancelled at times because of her refusal to comply with drug screens. This was done in order to ensure that petitioner was not actively under the influence of drugs in the children's presence. Given that petitioner failed to comply with the requirements to obtain visits during the proceedings, we find that the circuit court's ruling appropriately protects the children's best interests and was not in error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 20, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton